UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re<br><br>CARL STEVEN TORRES,<br><br>      Debtor. | Case No. 09-02979<br>Chapter 13 |
|---|---|
| SHANE KANE,<br><br>      Plaintiff,<br><br>vs.<br><br>CARL STEVEN TORRES,<br><br>      Defendant. | Adv. Pro. No.10-90005<br><br><br><br>Re: Docket No. 2 |

### AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial in this adversary proceeding was held on January 10 and 11, 2011. Gale L.F. Ching represented plaintiff and Jean Christensen represented defendant. Based on the evidence, the court makes the following

### FINDINGS OF FACT:

1.    In 2006, defendant Carl Steven Torres owned two Harley Davidson motorcycles. Because he could not afford the payments on both motorcycles, he

decided to sell the older one, which was a 2003 model and was subject to a lien securing a debt of about $10,500.00.

2. Mr. Torres agreed to sell the motorcycle to plaintiff Shane Kane, a coworker, for $14,000.00. Mr. Torres wanted to receive the full purchase price in cash, but Mr. Kane did not have sufficient funds. Mr. Torres and Mr. Kane approached a Harley Davidson dealer to see if Mr. Kane could obtain a loan to finance the purchase price. The dealer said that Mr. Kane did not qualify for such financing.

3. Mr. Torres and Mr. Kane then agreed that Mr. Kane would make monthly payments to Mr. Torres in an amount equal to the monthly payments that Mr. Torres owed to his lender. When Mr. Torres' loan was paid off after about 28 months, Mr. Kane would pay an additional lump sum of $3,500.00. The parties agreed that, as security, Mr. Torres would retain title to the motorcycle until full payoff.

4. The parties signed a written agreement containing these terms on December 15, 2006. The record includes two different versions of the written agreement (exhibits 1 and A). Although exhibit A may have been typewritten, signed, and backdated at some date after the original handwritten agreement (exhibit 1) was signed, exhibit A accurately and completely states the material

2

terms of the parties' original agreement.

5. Mr. Torres and Mr. Kane recognized that they would need to maintain insurance on the motorcycle. Mr. Torres had insured the motorcycle through GEICO. Mr. Kane approached GEICO about obtaining his own insurance, but GEICO told him that he could not insure the motorcycle because he did not have title to it. Mr. Torres and Mr. Kane then agreed that Mr. Kane would reimburse Mr. Torres for the cost of insuring the motorcycle (initially $30 per month, later increased to $44 per month), in addition to the other payments Mr. Kane agreed to make, and Mr. Torres would maintain his insurance on the motorcycle.

6. Both Mr. Torres and Mr. Kane believed that this arrangement would provide insurance protection for the motorcycle while Mr. Kane possessed and operated it. Neither Mr. Torres nor Mr. Kane checked with GEICO or reviewed the terms of the insurance policy to confirm that they were right about this assumption. Mr. Torres did not tell Mr. Kane that he had confirmed with GEICO that his insurance would protect the motorcycle after Mr. Torres delivered the motorcycle to Mr. Kane.

7. Unbeknownst to both Mr. Torres and Mr. Kane, the GEICO policy provided that: (a) the insured could not assign the policy to anyone without GEICO's permission, and (b) the policy did not provide any coverage after Mr.

3

Torres sold the motorcycle to Mr. Kane.

8.  Mr. Torres did not knowingly misrepresent to Mr. Kane that Mr. Torres' insurance would continue in effect after Mr. Torres sold the motorcycle to Mr. Kane. He sincerely, although incorrectly, believed that the policy would protect the motorcycle after the sale.

9.  When Mr. Torres first insured the motorcycle with GEICO, he requested "full coverage" because his loan on the motorcycle required such coverage. He believed that he had obtained full coverage and told Mr. Kane that the insurance provided full coverage. Unbeknownst to each other, Mr. Torres and Mr. Kane thought that "full coverage" meant two different things. Mr. Torres thought it meant coverage for liability to third parties and for damages to the motorcycle itself. Mr. Kane believed that it meant these two coverages plus coverage for any bodily injury to the operator of the motorcycle. Mr. Torres' policy did not provide this additional type of coverage.

10. Mr. Torres did not knowingly misrepresent to Mr. Kane that Mr. Torres' insurance provided "full coverage" as Mr. Kane understood that term. Mr. Torres did not know that Mr. Kane understood the term differently than did Mr. Torres.

11. Mr. Kane took possession of the motorcycle and began making

U.S. Bankruptcy Court - Hawaii   #10-90005   Dkt # 71   Filed 02/02/11   Page 4 of 13

payments to Mr. Torres in December 2006. He had Mr. Torres sign a receipt for each payment. Each receipt noted that a portion of the monthly payment was for insurance.

12. Mr. Torres' insurance policy was up for renewal on August 21, 2007. Mr. Torres timely renewed the policy and paid the renewal premium. Mr. Torres gave Mr. Kane one of the wallet cards evidencing that the motorcycle was insured as required by Hawaii law.

13. Mr. Torres' insurance policy was again up for renewal on August 21, 2008. GEICO sent the insurance cards to Mr. Torres with the notice of renewal and the bill for the insurance premium. Mr. Torres gave one of the cards to Mr. Kane. Mr. Torres did not, however, renew the policy or pay the renewal premium. GEICO canceled the policy for nonpayment of the premium on September 12, 2008.

14. Mr. Torres testified that he thought he had renewed the insurance. I do not credit this testimony. GEICO mailed him at least three notices reminding him to renew the policy. Although he denied receiving them (or denied remembering that he received them), his denials are implausible because GEICO mailed them to the correct address and he evidently received the same notices before the beginning of the preceding policy term. By August 2008, Mr. Torres

5

was in serious financial difficulties and was behind in paying his bills. He did not renew the insurance because he could not afford the renewal premium ($1,241.00 for both motorcycles).

15. Mr. Torres did not tell Mr. Kane until much later that he had allowed the insurance to lapse. Nevertheless, Mr. Torres continued to accept Mr. Kane's monthly payment, including the amount specifically earmarked for insurance. Mr. Torres accepted every payment and never told Mr. Kane that the insurance had expired. When he decided not to tell Mr. Kane that the insurance had lapsed, Mr. Torres intended to induce Mr. Kane to continue making the same payments as before. When he continued to make his payments, Mr. Kane justifiably relied on the false impression created by Mr. Torres that Mr. Torres had renewed the insurance. Mr. Kane had no reason to suspect that Mr. Torres had failed to renew the insurance.

16. If Mr. Torres had told Mr. Kane that Mr. Torres had allowed the insurance to expire, Mr. Kane would have parked the motorcycle and not ridden it until he had secured insurance coverage.

17. Coincidentally, in or around August 2008 Mr. Kane misplaced the receipt book in which he had recorded his payments to Mr. Torres. He therefore did not get contemporaneous written receipts from Mr. Torres after that date. It is

U.S. Bankruptcy Court - Hawaii   #10-90005   Dkt # 71   Filed 02/02/11   Page 6 of 13

undisputed, however, that Mr. Kane continued to pay Mr. Torres the same amount every month, and that amount included a portion earmarked for insurance.

18. Mr. Kane's balloon payment was due in March 2009, when Mr. Torres' last payment to his lender was due. Mr. Kane did not have enough money to pay the full amount, so he asked Mr. Torres if he could simply continue making monthly payments. Mr. Torres agreed. Mr. Torres testified that the topic of the insurance payment did not come up during this discussion. Mr. Kane testified that he did specifically mention that he wanted to continue making the same payments, including insurance. Because Mr. Kane continued to make monthly payments in the same amount as before, which amount had always included a portion for the insurance, I find that the parties agreed that the existing arrangement concerning insurance would continue.

19. On or about September 20, 2009, Mr. Kane was involved in an accident while riding the motorcycle. Mr. Kane was injured and the motorcycle was damaged. The reasonable and necessary expense of repairing the motorcycle is $7,829.07. Mr. Kane incurred medical bills of $1,647.08 and lost wages of $1,056.00.

20. The police officer responding to the accident asked for Mr. Kane's insurance card. Mr. Kane produced the last card that Mr. Torres had given him,

U.S. Bankruptcy Court - Hawaii    #10-90005    Dkt # 71    Filed 02/02/11    Page 7 of 13

which stated that the motorcycle was insured for the period from August 21, 2008 through August 21, 2009. Because the policy period stated on the card had expired, the police officer gave Mr. Kane a ticket for failure to maintain insurance as required by law.

21. The next day, Mr. Kane told Mr. Torres that he had been in an accident the preceding day and that he needed the current insurance card so he could contest the ticket. Either that day or shortly thereafter, Mr. Torres told Mr. Kane for the first time that the insurance had expired before the accident.

22. After the accident, Mr. Kane found the missing receipt book and asked Mr. Torres to sign receipts for Mr. Kane's payments. Mr. Torres complied. All of the receipts that Mr. Torres signed confirmed that a portion of Mr. Kane's payments was for insurance.

23. Also after the accident, Mr. Kane made a claim on the GEICO insurance policy. GEICO denied the claim on the grounds that the insurance policy was not in force on the date of the accident and Mr. Torres had surrendered ownership of the motorcycle.

24. Mr. Kane sued Mr. Torres in state court. Before the state court decided the case, Mr. Torres commenced the above-captioned bankruptcy case. Mr. Kane brought this adversary proceeding to obtain a determination that his

8

claims against Mr. Torres are not dischargeable.

Based on the foregoing findings of fact, the court makes the following

**CONCLUSIONS OF LAW**:

1. The court has jurisdiction over this adversary proceeding, which is a core proceeding in bankruptcy. 28 U.S.C. § 157(b)(2)(I) (2006). Venue is proper.

2. Mr. Kane contends that his claims against Mr. Torres are is excepted from discharge under sections 1328(a)(2), 523(a)(2)(A), and 523(a)(6) of the Bankruptcy Code. See 11 U.S.C. §§ 1328(a)(2), 523(a)(2)(A), (a)(6) (2006).

3. Section 523(a)(6) does not apply in a chapter 13 case such as this one. Section 1328(a) enumerates the exceptions to discharge in chapter 13; section 523(a)(6) is not included.

4. Section 1328(a)(4) is similar to section 523(a)(6), but it does not help Mr. Kane's case. Section 1328(a)(4) covers debts "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." 11 U.S.C. § 1328(a)(4). Mr. Torres did not cause any of Mr. Kane's personal (i.e., bodily) injuries.

5. Section 523(a)(2)(A) does apply in a chapter 13 case. 11 U.S.C. § 1328(a)(2).

9

6. Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. <u>Snoke v. Riso</u> (<u>In re Riso</u>), 978 F.2d 1151, 1154 (9th Cir. 1992); <u>see</u> also <u>National Union Fire Insurance Co. of Pittsburgh v. Bonnanzio</u> (<u>In re Bonnanzio</u>), 91 F.3d 296, 300 (2d Cir. 1996); <u>Meyer v. Rigdon</u>, 36 F.3d 1375, 1385 (7th Cir. 1994).

7. The plaintiff seeking to establish an exception to the discharge bears the burden of proof. Fed. R. Bankr. P. 4005; <u>see</u> also <u>In re Niles</u>, 106 F.3d 1456, 1464-65 (9th Cir. 1997). The plaintiff must meet this burden by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 286 (1991); <u>Turtle Rock Meadows Homeowners Ass'n v. Slyman</u> (<u>In re Slyman</u>), 234 F.3d 1081, 1085 (9th Cir. 2000).

8. Section 523(a)(2)(A) of the Bankruptcy Code provides:

A discharge under . . . this title does not discharge an individual debtor from any debt -

\* \* \*

   (2)   for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by -

       (A)   false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

U.S. Bankruptcy Court - Hawaii   #10-90005   Dkt # 71   Filed  02/02/11   Page 10 of 13

11 U.S.C. § 523(a); see also Cohen v. de la Cruz, 523 U.S. 213, 218-22 (1998).

      9.     To prevail on a claim under section 523(a)(2)(A), a creditor must demonstrate five elements:

    (1)    misrepresentation, fraudulent omission or deceptive conduct by the debtor;

    (2)    knowledge of the falsity or deceptiveness of his statement or conduct;

    (3)    an intent to deceive;

    (4)    justifiable reliance by the creditor on the debtor's statement or conduct; and

    (5)    damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In re Weinberg, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009); In re Slyman, 234 F.3d at 1085; Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996).

      10.    Fraud does not always require an express misrepresentation. In re Felton, 197 B.R. 881, 889 (N.D. Cal. 1996) (conduct creating a false pretense or false representation can justify nondischarge under section 523(a)(2)); see also Capital Corporation v. Weinstein, 31 B.R. 804, 809 (Bankr. E.D. N.Y. 1983) ("It is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under

11

U.S. Bankruptcy Court - Hawaii   #10-90005   Dkt # 71   Filed  02/02/11   Page 11 of 13

§ 523(a)(2)(A)."). A debtor's misleading conduct intended to convey an inaccurate impression may constitute "false pretenses." Id.; see also In re Webb, 349 B.R. 711, 716 (Bankr. D. Or. 2006) ("'False pretenses' or 'false representation' both involve intentional conduct intended to create and foster a false impression.").

11.  When Mr. Torres sold the motorcycle to Mr. Kane, Mr. Torres did not intentionally mislead Mr. Kane. He believed (incorrectly, but sincerely) that his insurance policy would continue to provide coverage after he sold the motorcycle to Mr. Kane. He sincerely believed that the policy provided "full coverage" as he understood that phrase, and he did not know that Mr. Kane understood the phrase differently.

12.  The situation changed, however, when Mr. Torres let the insurance policy expire in August 2008. Mr. Torres knew that he did not renew the policy. Mr. Torres intended to deceive Mr. Kane by continuing to take his payments, including the portion earmarked for insurance, without disclosing that there was no insurance policy. Instead of using the money for its intended purpose, he pocketed it. By giving Mr. Kane the insurance card, he reinforced the impression that he had renewed the policy. Mr. Torres intended to induce Mr. Kane to continue making the payments. Mr. Torres' conduct amounted to false pretenses,

12

false representations, or actual fraud within the meaning of sections 523(a)(2)(A) and 1328(a)(2).

13. Mr. Kane justifiably relied on the false impression created by Mr. Torres that Mr. Torres had renewed the insurance.

14. This leaves the question of the extent to which Mr. Kane's claims are not dischargeable. If Mr. Torres had informed Mr. Kane that he had not renewed the policy, Mr. Kane would have parked the motorcycle until he obtained appropriate insurance. Because he would not have been riding the motorcycle if Mr. Torres had told him the truth about the insurance, he would not have been involved in the accident, and would not have suffered the bodily injuries and damage to the motorcycle of which he complains, but for Mr. Torres' fraudulent nondisclosure and false pretenses. Mr. Torres' misconduct therefore caused all of the damages which Mr. Kane has proven.

## **CONCLUSION**

A separate final judgment shall enter determining that Mr. Torres is indebted to Mr. Kane in the amount of $10,532.15 and that the indebtedness is not dischargeable in bankruptcy.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **02/02/2011**

13

U.S. Bankruptcy Court - Hawaii   #10-90005   Dkt # 71   Filed  02/02/11   Page 13 of 13